IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BRADLEY K AERY and RANDI G. AERY | § § § | |
| Plaintiffs | § § § | |
| v. | § § | CIVIL ACTION NO. G-12-343 |
| Bank of America, N.A., | § § § | |
| Defendant. | § | |

**OPINION AND ORDER**

Before the Court, with the consent of the parties, is Defendant Bank of America, N.A.'s Motion for Judgment on the Pleadings. (Docket Entry (Dkt.) No. 9). Plaintiffs filed a response to the Motion. (Dkt. No. 11). The Court, after carefully considering the Motion, the response and the applicable law, concludes that Defendant Bank of America's Motion should be **GRANTED IN PART** and **DENIED IN PART** as discussed below.

**I. BACKGROUND**

This action was brought by Plaintiffs Bradley K. Aery and Randi G. Aery against Defendant Bank of America (BOA) after a dispute arose between the parties involving the Aerys' mortgage. (Dkt. No. 1). Plaintiffs allege that on October 24, 2001, they obtained a loan (#6655787890) from Defendant BOA to purchase vacant land that was located at 201 E. Viejo, Friendswood, TX, which is in Galveston County. After purchasing the lot, Plaintiffs built a house on the property. Although the house was not encumbered by a loan, Plaintiffs obtained a

1

homeowner and windstorm insurance policy through Nationwide Insurance Company in 2003. Plaintiffs decided to refinance the original loan on the property (#706542816) through BOA on September 23, 2003.

At some point in time, which is not specified in the pleadings, Plaintiffs opted to discontinue the windstorm coverage. In or around May 2011, BOA advised Plaintiffs that, in accordance with the Deed of Trust provisions, they were required to have windstorm insurance coverage on the house. BOA also advised Plaintiffs that if they did not obtain windstorm coverage, it would do so as permitted by the Deed of Trust. While Plaintiffs disputed that this coverage was required,[1] BOA continued to insist that it was necessary. Ultimately, when Plaintiffs failed to obtain the coverage, BOA force-placed a windstorm policy on the Property and charged the cost of the policy back to Plaintiff through their escrow account.

Plaintiffs allege that starting in December 2011, BOA then began returning their monthly mortgage payments. BOA continued to reject Plaintiffs' monthly payments and sometime thereafter, initiated foreclosure proceedings on the property. At this point, Plaintiffs' allege that "[t]o end the frustration and expense and stop the foreclosure proceedings," they chose to pay off their loan in full.[2]

---

[1] It appears that Plaintiffs provided BOA with a "To Whom It May Concern" letter from their insurance agent that was dated December 28, 2011. The letter stated that Plaintiffs had property insurance with Nationwide since the house was built in 2003, but that they did not currently carry windstorm insurance coverage and Nationwide did not require the coverage. (Dkt. No. 1, Ex. A).

[2] Plaintiffs allege that when they paid off the loan, BOA included the following charges in the "pay-off" amount: $5,486.92 in attorney fees for the foreclosure proceeding; $4,680.32 for a forced placed windstorm policy; and $1,686 in undefined interest. Plaintiffs also allege that, despite having paid off the loan, BOA continued to accept automatic electronic payments from their checking account which totaled $2,258.44; when Plaintiffs alerted BOA to this, they were informed that the funds would be returned, however, they claim this never occurred.

Plaintiffs filed this action against Defendant BOA in State court. Plaintiffs allege claims for breach of contract and violation of the Texas Deceptive Trade Practices Act. Plaintiffs seek to recover economic damages in the amount of $52,500 for the breach, treble damages pursuant to Texas Bus. & Com. Code §§ 17.46(b) and 17.50(1)(b)(1) and the Texas Deceptive Trade Practices Act, and attorney fees. Defendant BOA removed the action to federal court based on diversity of citizenship. On December 3, 2012, Defendant filed an Answer (Dkt. No. 3). In their Answer, BOA asserts the following affirmative defenses: failure to state claim; laches; estoppel and waiver; and unclean hands. BOA asserts no counter-claims. On February 5, 2013, BOA filed a Motion for Judgment on the Pleadings (Dkt. No. 9), to which Plaintiffs filed a Response on February 28, 2012. (Dkt. No. 11). Defendant notified the Court that it would not be filing a reply. Consequently, Defendant's Motion is now ripe for consideration.

## II. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule(b)(6)." *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *see also, Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). The Court, therefore, analyzes Defendant's Motion under the well-established motion to dismiss standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 686 (2009); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007).

## III. DISCUSSION

### A. Breach of Contract

Plaintiffs bring a claim against Defendant for breach of contract (*i.e.*, the Deed of Trust). A plaintiff claiming breach of contract must establish: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex.App.-San Antonio 2002, no pet.); *see also*, *Lewis v. Bank of America N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003). Defendant insists that Plaintiffs' cannot establish a breach of contract claim as a matter of law because they have not alleged, nor can they show, that they fulfilled their obligations under the contract because they refused to obtain windstorm insurance coverage. (Dkt. No. 9 at 5-7).

Initially, when reviewing the Complaint, the Court observes that Plaintiffs insist that BOA never had an insurable interest in the house and, hence, breached the contract when it insisted windstorm coverage was required on the house. The Court cannot agree. When Plaintiffs refinanced their loan on the land in 2003, they agreed that "any improvements now or hereafter erected on the property" – such as the house they built – became or would become part of the "Property" referred to in the Security Instrument. (Dkt. No. 9, Ex. A). Thus, it seems clear that Defendant BOA's security interest in the "Property" would have included the house.

The Deed of Trust, having defined BOA's interests, then proceeds on to detail the numerous conditions that apply. The Deed of Trust, in relevant part, provides:

> **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:   *

4

> \* \* (c) premiums for any and all insurance required by Lender under Section 5.
>
> \* \* \* \*
>
> If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrow fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.
>
> \* \* \* \*
>
> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.
>
> \* \* \* \*
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at the Lender's option and Borrower's expense. \* \* \* \* Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

(Dkt. No. 9, Ex. A). Pursuant to these contractual provisions, BOA would have been well within its rights under the Deed of Trust to require Plaintiffs insure the Property, which included the house.

Problematically, the question of what types of coverage BOA was allowed to require remains an issue. As discussed above, in May 2011, Defendant notified Plaintiffs that windstorm

insurance coverage was required under the contract. Plaintiffs refused to purchase windstorm coverage, which then prompted Defendant to purchase the coverage and charge the amount of the premium back to the Plaintiffs through their escrow account. Plaintiffs now insist that they did not breach the contract, as Defendant urges in its Motion for Judgment on the Pleading, because a lender may only force-place insurance coverage for a described coverage and nowhere in the Deed of Trust is "windstorm" insurance coverage required; nor is the scope of "extended coverage" defined. (Dkt. No. 11 at 1-2). Unfortunately, Defendant neglected to reply to this argument. While Plaintiffs' argument seems rather thin, due to the standard of review that pertains to the pending Motion, the Court is fairly constrained in its review of this matter. Therefore, with some reluctance, the Court feels it must allow this claim to survive—for now—until such time as a motion for summary judgment is filed that addresses the contractual provisions in question and Plaintiffs' claim of ambiguity.

Accordingly, Defendant's Motion for Judgment on the Pleadings on this claim must be **DENIED** as to Plaintiffs' breach of contract claim.

### B. Texas Deceptive Trade Practices Act and the Tie-In Provision

Plaintiffs allege that as their mortgage lender, BOA violated §§17.46(b) and 17.50(1)(b)(1) of the Texas Deceptive Trade Practices Act (DTPA). In order to establish a claim under the DTPA, a plaintiff must establish that (1) the plaintiff is a consumer, (2) the defendant can be sued under the DTPA, (3) the defendant committed a false, misleading, or deceptive act or practice, and (4) the act or practice was a producing cause of the plaintiff's damages. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). Defendant moves for a judgment on the

pleadings on the ground that Plaintiffs do not qualify as "consumers" under the Act and, thus, have no standing to assert this claim. (Dkt. No. 9 at 7).

In order to be a "consumer" under the DTPA, a person "must seek or acquire goods or services by lease or purchase; and "the goods or services sought or acquired must form the basis of [that person's] complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex.App.-Ft. Worth 2007, pet. denied). Unfortunately, for Plaintiffs, they do not qualify as "consumers" for two reasons. First, a mortgage is not normally considered a good or a service for purposes of the DTPA. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex.1980); *see also*, *Fix*, 242 S.W.3d at 160-61(refinancing of purchased home is not a good or service for purposes of qualifying as a consumer under the DTPA); *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *4 (N.D. Tex. 2011) (recognizing that extensions of further credit or modifications of the original loan do not satisfy the "good or services" element of the DTPA." ); *Grant-Brooks v. WMC Mortgage Corp.*, No. 3:02-CV-2455-AH, 2003 WL 23119157 (N.D. Tex. Dec. 9, 2003) (home equity loan is not a good or service).

Second, Plaintiffs' complaints do not arise from the either property they bought (or refinanced) or even with the hazard insurance itself, but, instead, they arise from a standard hazard insurance requirement contained in the Deed of Trust that they agreed to in order to secure (re)financing for the property. *See Knight v. Int'l Harvester Credit Corp.*, 627 S.W2d 382, 388 (Tex. 1982) (the good or service sought by the borrower must form the basis form the basis of the complaint); *Craig v. Ameriquest Mortg. Co.*, No. H-04-3929, 2005 WL 2921947, at *3-5 (S.D. Tex. November 4, 2005) (Hittner, J.) (determining that plaintiff was not a consumer under DTPA because his complaint arose out of the lender's loan requirements regarding hazard insurance).

In their Response to Defendant's Motion, Plaintiff purports to argue that they need not be "consumers" under the tie-in provision. (Dkt. No. 11 at 4, ¶12). Even assuming Plaintiffs' had alleged a tie-in claim in their Complaint,[3] it is not exempt from the DTPA's requirement that plaintiffs show that they are consumers. *See Cushman v. GC Services, L.P.*, 397 Fed.Appx. 24, 28 (5th Cir. 2010); TEX. BUS. & COM. CODE § 1750(h); *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968 at *9 (E.D. Tex. Feb. 16, 2010) (when a plaintiff is not a consumer under the DTPA, his claim(s) under the tie-in provisions also fail).

In conclusion, because Plaintiffs are not consumers under the DTPA, their DTPA claims, as well as any tie-in claim they may have alleged, fail as a matter of law. *See Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 122 (Tex.App.–San Antonio, 2002, no pet.) (determining whether individual is a "consumer" is normally question of law for the court). The Court, therefore, **GRANTS** Defendant's Motion for Judgment on the Pleadings with regard to these claims.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Defendant Bank of America's Motion for Judgment on the Pleadings (Dkt. No. 9) is **GRANTED** as to Plaintiffs' claims under the Texas DTPA, but **DENIED** as to Plaintiffs' breach of contract claim.

**DONE** at Galveston, Texas, this 26th day of April, 2013.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

[3] It is not evident from Plaintiffs' Complaint that they have alleged any such claim.